*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

      Plaintiff-Appellee,

v

DARRELL WAYNE FELTON, JR.,

      Defendant-Appellant.

FOR PUBLICATION
July 16, 2026
10:55 AM

No. 375518
Kalamazoo Circuit Court
LC No. 2021-001208-FC

Before: GADOLA, C.J., and BOONSTRA and CAMERON, JJ.

CAMERON, J.

Defendant pleaded guilty to manslaughter, MCL 750.321, and was sentenced to serve 7 to 15 years' imprisonment. He appeals by leave granted,[1] challenging the trial court's restitution order requiring him to pay for two memorial pendants and the trial court's assessment of Offense Variables (OV) 5 and 6. We affirm defendant's sentence but vacate the trial court's order of restitution in connection with the two pendants.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Defendant shared custody of his child with his former wife, Everlin Cano. In July 2021, the child, while staying with defendant, contacted Cano and complained of being hungry and not being given food. Concerned, Cano went to defendant's apartment with her boyfriend, the victim. After arriving, Cano called defendant. During this phone call, the victim argued with defendant's girlfriend. The argument continued after defendant's girlfriend ended the call and accompanied defendant outside to speak with Cano and the victim. Defendant grabbed his firearm before leaving the apartment, which he testified he typically did.

When defendant and his girlfriend approached Cano's car, the victim and defendant's girlfriend resumed arguing. The verbal exchange escalated to the point that the victim told

---

[1] *People v Felton*, unpublished order of the Court of Appeals, entered June 25, 2025 (Docket No. 375518).

defendant to restrain his girlfriend before he "beat [defendant's] a\*\*." Defendant's girlfriend responded by spitting at the victim. The victim then began to exit the car, at which point defendant fatally shot the victim. The manner in which the victim exited the car was disputed at trial, but it was undisputed that the victim did not have a weapon and never touched either defendant or his girlfriend. Defendant was arrested and charged with open murder, MCL 750.316, and carrying a firearm during the commission of a felony (felony-firearm), MCL 750.227b.

After defendant's jury trial ended in a mistrial because the jury could not reach a verdict, defendant pleaded guilty to manslaughter in exchange for dismissal of the felony-firearm charge. Relevant to this appeal, the trial court assessed 15 points for OV 5 (serious psychological injury to members of the victim's family), and 25 points for OV 6 (intent to kill or injure another individual).

Defendant later moved to correct his sentence, arguing that two memorial pendants costing a combined $780 should not have been included in the restitution award. The trial court denied the motion, and defendant now appeals.

## II. RESTITUTION

Defendant first argues that the trial court erred when it included the cost of two pendants in its restitution award. We agree.

### A. STANDARDS OF REVIEW

"A trial court's decision to order restitution is reviewed for an abuse of discretion, which occurs when the trial court chooses an outcome that falls outside the range of principled outcomes." *People v Lee*, 314 Mich App 266, 272; 886 NW2d 185 (2016) (quotation marks and citations omitted). "However, when the question of restitution involves a matter of statutory interpretation, review de novo applies." *Id*. (quotation marks, brackets, and citation omitted). "A trial court's factual findings underlying a restitution order are reviewed for clear error." *Id*. "A finding is clearly erroneous if this Court is left with the definite and firm conviction that a mistake has been made." *Id*. (quotation marks and citation omitted).

### B. ANALYSIS

The Crime Victim's Right Act (CVRA), MCL 780.751 *et seq*., and the general restitution statute, MCL 769.1a, require sentencing courts to order defendants to make full restitution for losses directly caused by the criminal conduct underlying the conviction. See *People v Corbin*, 312 Mich App 352, 359-360; 880 NW2d 2 (2015). Specifically, the CVRA, MCL 780.766(2), "mandates that a sentencing court order convicted defendants to 'make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction.' " *Corbin*, 312 Mich App at 359, quoting MCL 780.766(2) (brackets omitted). The statute further provides that "[i]f a crime results in physical or psychological injury to a victim, the order of restitution shall require" the defendant to "[p]ay an amount equal to the cost of actual funeral and related services." MCL 780.766(4)(f). Similarly, the general restitution statute requires a criminal defendant to "make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction[,]"including, as relevant here, payment of "an amount equal to the cost of actual funeral and related services." MCL 769.1a(2) and (5).

Although both statutes require sentencing courts to order restitution that is "maximal and complete[,]" restitution is limited to losses that bear a "direct, causal relationship" to the defendant's criminal conduct. *People v Bentley*, 350 Mich App 285, 295; 31 NW3d 823 (2024) (quotation marks and citations omitted). "Therefore, restitution may encompass only those losses that are easily ascertained and are a direct result of a defendant's criminal conduct." *Id*. (quotation marks and citation omitted). The prosecution bears the burden of proving the amount of the victim's loss, and any dispute regarding restitution must be resolved by a preponderance of the evidence. *Id*.

> In granting trial courts the authority to order restitution, "the Legislature has clearly manifested an intent to make victims of a crime as whole as they can fairly be made and to leave the determination of how best to do so to the trial court's discretion on the basis of the evidence presented" by the petitioner to prove the victim's loss. [*In re White*, 330 Mich App 476, 483; 948 NW2d 643 (2019) (citation omitted).]

This case presents an issue of first impression requiring us to determine what constitutes "actual funeral and related services" under the restitution statutes. As this Court has explained, "[o]ur Supreme Court has defined the word 'actual' as 'existing in act, fact, or reality; real.' " *Corbin*, 312 Mich App at 365 (citation omitted). Accordingly, restitution is limited to funeral costs that were actually incurred. Moreover, the costs must have been incurred for the funeral itself or for "related services" to the funeral. Finally, to be recoverable, the actual funeral or related costs must be a direct result of the defendant's criminal conduct, *Bentley*, 350 Mich App at 295, meaning that only expenditures that are reasonable to conduct the funeral and related services are recoverable.[2]

Defendant also argues on appeal that the restitution statutes only permit recovery for "services" not "goods." We decline to construe the statutes so narrowly, as doing so would circumvent the overall purpose of restitution—to make the victim whole. Under defendant's interpretation, a victim's family would be required to bear the cost for traditional funeral items like caskets, urns, and flowers, even though those items are commonly recognized as components of a funeral. Nothing in the statutory language suggests that the Legislature intended this result. We

---

[2] The parties agree that the trial court's responsibility to order restitution for funeral or related expenses is subject to a reasonableness requirement. For example, both acknowledge that a victim's family cannot recover restitution for extravagant expenses, like a casket made of gold or an elaborate mausoleum. Although such purchases may technically qualify as "actual" funeral costs, we conclude that compensation for such lavish expenditures would be contrary to the actual goal of restitution: to make the victims whole, not to provide a windfall. See *In re White*, 330 Mich App at 480. Accordingly, we hold that, in addition to proving that the claimed expenses are actual funeral or related costs directly resulting from the defendant's crime, the prosecution also bears the burden of demonstrating that the claimed expenditures are reasonable.

therefore hold that the restitution statutes authorize the recovery of expenses actually incurred for the funeral, whether for goods or services, as well as for services related to the funeral.[3]

Here, the memorial pendants fall outside of the plain language of the restitution statutes. The sliding heart pendant and wings pendant were neither funeral costs nor related services. The prosecution presented no evidence that these pendants were used to prepare, conduct, or complete the actual funeral or to facilitate the disposition of the victim's remains or otherwise constitute a "related service[]" provided in connection with the actual funeral. Although the prosecution theorizes that one or both of the pendants are capable of storing ashes of the deceased, it is equally plausible that they were simply pieces of memorial jewelry purchased by the family for personal remembrance; commemorative keepsakes purchased for the benefit of a victim's family member, independent of the funeral's expenses.

The fact that the pendants were purchased from the funeral home and are listed on its invoice did not transform them into compensable funeral expenses. If every memorial item sold by a funeral home necessarily qualified as a compensable funeral expense, the statutory limitation to the cost of "actual funeral and related services" would be rendered meaningless.

The only evidence the prosecution presented to the trial court was the funeral home's invoice. That invoice referenced the purchase of a basic funeral home package, together with several optional purchases related to the funeral that increased the amount owed. Among the optional purchases were the "sliding heart pendant" and "wings pendant" at issue in this case, totaling $780. Although the parties seem to agree that the items are memorial jewelry sold by the funeral home, the prosecution provided no evidence that they constituted compensable funeral expenses under either restitution statute. Because the prosecution did not satisfy its burden of proof, the trial court abused its discretion by awarding restitution for the pendants.

## III. OFFENSE VARIABLES

Defendant next argues that the trial court erred by assessing OV 5 at 15 points and OV 6 at 25 points. We disagree.

## A. STANDARDS OF REVIEW

We review issues regarding "the proper interpretation and application of the legislative sentencing guidelines[]" de novo. *People v Ambrose*, 317 Mich App 556, 560; 895 NW2d 198 (2016) (quotation marks and citation omitted). The trial court's factual findings "are reviewed for clear error and must be supported by a preponderance of the evidence." *Id*. (quotation marks and citation omitted). "Clear error is present when the reviewing court is left with a definite and firm conviction that an error occurred." *People v Fawaz*, 299 Mich App 55, 60; 829 NW2d 259 (2012) (quotation marks and citation omitted). "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question

---

[3] We interpret "related services" to be services that were not necessarily performed contemporaneously with the funeral but are nonetheless directly related to the funeral itself. So, for example, the cost of embalming or cremation before the funeral is a related service.

of statutory interpretation," which we also review de novo. *Ambrose*, 317 Mich App at 560 (quotation marks and citation omitted).

## B. OV 5

OV 5 addresses "psychological injury to a member of a victim's family." MCL 777.35(1). 15 points for OV 5 are assessed if "[s]erious psychological injury requiring professional treatment occurred to a victim's family." MCL 777.35(1)(a). Defendant argues that although the victim's family suffered grief, the evidence here did not establish that their grief rose to the level of "serious" psychological injury, and the trial court improperly presumed serious psychological harm based solely on the nature of the offense.

Defendant mischaracterizes the trial court's reasoning. In explaining its decision, the trial court emphasized the victim impact statements it had reviewed, specifically noting the family's statements concerning the victim's recent loss of his father and the cumulative emotional toll on the family. Although the court happened to reference "the nature of the case," it made clear that its ruling rested on the evidence submitted by the victim's family, not a presumption that serious psychological injury necessarily accompanies every homicide. The trial court further recognized that professional treatment need not actually have been sought to support assessing OV 5.

The record also refutes defendant's claim that he family suffered only ordinary grief as opposed to "serious" psychological injury. For purposes of OV 5, the word "serious" is defined "as having important or dangerous possible consequences." *People v Calloway*, 500 Mich 180, 186; 895 NW2d 165 (2017) (quotation marks and citation omitted). The victim impact statements describe profound and lasting emotional harm. The victim's aunt stated that the loss "destroyed" her life, leaving her unable to describe her pain and emptiness she was experiencing. The victim's grandmother explained that defendant's actions "left a huge hole in this family that will never close[,]" and his brother discussed the fact that while other kids in his class were "worried about what college they were going to or thinking about their futures[,]" he was "stuck thinking about if [his] family was going to make it through another day." The victim's mother stated that defendant "destroyed" her and "ripped [the victim's family] in half." Most significantly, the victim's parents reported that their daughter had sought counseling because of the psychological impact of the homicide. Thus, there was ample evidence to support the trial court's 15-point assessment for OV 5.

## C. OV 6

OV 6 addresses "the offender's intent to kill or injure another individual." MCL 777.36(1). 25 points are assessed if "[t]he offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." MCL 777.36(1)(b). The statute requires that the trial court assess OV 6 "consistent with a jury verdict unless the judge has information that was not presented to the jury." A 10-point assessment is required "if a killing is intentional within the definition of second[-]degree murder or voluntary manslaughter, but the death occurred in a combative situation or in response to victimization of the offender by the decedent." MCL 777.36(2)(a) and (b).

Defendant first argues that a 25-point assessment was improper because he pleaded guilty to manslaughter, not murder, and the criminal intent for manslaughter does not match the intent required for a 25-point assessment. Defendant's argument conflates the intent required in MCL 777.36(2)(b) with that required under MCL 777.36(1)(b). While it is true that MCL 777.36(2)(b) concerns intent "within the definition of second[-]degree murder or voluntary manslaughter," MCL 777.36(1)(b) only requires an "unpremeditated intent to kill, the intent to do great bodily harm, or [the creation of] a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." Defendant is correct that murder includes an element of malice absent from manslaughter, but the intent element of manslaughter is "either an intent to kill, an intent to commit great bodily harm, or an intent to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result." *People v Mendoza*, 468 Mich 527, 540; 664 NW2d 685 (2003). The intent element for manslaughter aligns squarely with that provided in MCL 777.36(1)(b).[4]

As for defendant's claim that he should have only been assessed 10 points for OV 6, neither MCL 777.36(1)(c) nor MCL 777.36(2)(b) warrant such an assessment. While the trial court recognized that defendant could also fall under MCL 777.36(1)(c), which assigns 10 points when "[t]he offender had intent to injure or the killing was committed in an extreme emotional state caused by an adequate provocation and before a reasonable amount of time elapsed for the offender to calm or there was gross negligence amounting to an unreasonable disregard for life[,]" the statute instructs that a trial court assign "the number of points attributable to the one that has the highest number of points[.]" MCL 777.36(1). Thus, even if we were to agree that defendant satisfied the requirements for both a 25-point assessment and a 10-point assessment, the trial court properly assigned the higher point value.

Finally, the trial court did not clearly err by rejecting defendant's contention that the killing occurred in a "combative situation" or "in response to victimization of the offender by the decedent." The trial court found that defendant armed himself before he confronted Cano and the victim and shot the victim in the back when he began exiting the car after being spit at by defendant's girlfriend. The record also supports the trial court's reasoning that the victim was not the aggressor, and that the underlying conflict was between the victim and defendant's girlfriend, not defendant himself. Thus, even if the victim were the aggressor, defendant was not the one being victimized as required by the statute. To the extent defendant challenges the trial court's reliance on one witness's testimony over another's with respect to the underlying facts that gave rise to this case, we defer to the trial court's credibility assessments. *People v Ziegler*, 343 Mich App 406, 411; 997 NW2d 493 (2022).

---

[4] This also necessarily undermines defendant's argument that the trial court was obligated to sentence him in accordance with his guilty plea under MCL 777.36(2)(a), because it did, but we note that MCL 777.36(2)(a) is inapplicable in this case because it only requires that a trial court sentence a defendant in accordance with the *jury verdict*, not the defendant's guilty plea. Indeed, defendant acknowledges this distinction but fails to explain why his argument should still prevail.

We affirm defendant's sentence but vacate in part the trial court's order of restitution with respect to the two pendants.

/s/ Thomas C. Cameron
/s/ Michael F. Gadola
/s/ Mark T. Boonstra